**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEREMY FRYDMAN,<br>on behalf of plaintiff and the class defined<br>below, | )<br>)<br>) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PORTFOLIO RECOVERY<br>    ASSOCIATES, LLC | )<br>) |
| | ) |
| Defendant. | ) |

11 CV 524

Judge Blanche M. Manning

Magistrate Judge Jeffrey T. Gilbert

<u>**MEMORANDUM IN SUPPORT OF**</u>
<u>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**</u>

      Plaintiff has moved for class certification under Fed.R.Civ.P. 23(a) and 23(b)(3). This memorandum is respectfully submitted in support of that motion.

**I.    INTRODUCTION**

      Defendant Portfolio Recovery Associates, LLC has been attempting to collect from plaintiff an alleged debt incurred for personal, family or household purposes and not for business purposes. During December 2010 and January 2011, plaintiff received a series of automated telephone calls from defendant on his cell phone. Defendant made at least the following calls: December 8, 2010 at 1:56pm, December 14, 2010 at 8:46am, December 23, 2010 at 4:15pm, December 29, 2010 at 8:39am, December 29, 2010 at 12:10pm, January 3, 2011 at 7:22pm, January 5, 2011 at 4:20pm, January 7, 2011 at 10:08am, January 7, 2011 at 8:37am, January 9, 2011 at 6:27pm, January 10, 2011 at 1:22pm, January 12, 2011 at 11:16am, January 12, 2011 at 6:54pm, January 13, 2011 at 2:34pm, January 14, 2011 at 3:58pm, January 16, 2011 at 3:30pm, January 17, 2011 at 1:22pm, January 17, 2011 at 2:23pm, January 18, 2011 at 10:36am, and January 19, 2011 at 2:03pm.

      On information and belief, the calls were placed using predictive dialers. The predictive dialers place calls without human intervention until a connection is made, in which case

1

the dialers attempt to connect the recipient with a debt collector. Plaintiff did not authorize the automated placement of calls to his cell phone. Plaintiff did not furnish his cell phone number to defendant or the putative creditor. Plaintiff did not even obtain his current cell phone number until after the alleged debt was charged off.

Plaintiff and each class member is entitled to statutory damages.

Defendant violated the TCPA even if its actions were only negligent. Defendant should be enjoined from committing similar violations in the future.

The TCPA, 47 U.S.C. §227, provides:

**§ 227. Restrictions on use of telephone equipment**

**. . . (b) Restrictions on use of automated telephone equipment.**

**(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**

> **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–**

>> **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

The TCPA, 47 U.S.C. §227(b)(3), further provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

> **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**

> **(C) both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may,**

2

**in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

Defendant violated the TCPA by placing automated calls to plaintiff's cell phone.

## II.     STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 1004-1005; 574 N.E.2d 760, 766 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection.... To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action – private suits or governmental actions – have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.**

*Accord, Clark v. TAP Pharma. Prods., Inc.*, 343 Ill.App.3d 538, 552; 798 N.E.2d 123, 134 (5th Dist. 2003).

Recently, the Second Circuit noted that class actions allow for the aggregation of small claims held by many consumers. Denial of certification would lead to a situation where consumers holding a small claim would be less likely to pursue relief given the costs involved, to the benefit of businesses which, in violating the law, obtain a significant financial benefit from their actions without fear of meaningful litigation. *Ross v. Bank of America NA*, 524 F.3d 217 (2d Cir. 2008).

Numerous claims brought under the TCPA, mostly with respect to unsolicited faxes, have been certified as class actions. See, *e.g.*, *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, 2010 U.S. Dist. LEXIS 125842 (N.D.Ill. Nov. 29, 2010); *Garrett v. Ragle Dental Lab., Inc.,* 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010) (relying upon *Hinman v. M&M Rental Center, Inc.*, 545 F.Supp.2d 802 (N.D. Ill. 2008)); *Targin Sign Systems, Inc. v. Preferred Chiropractic*

*Center, Ltd.*, 679 F.Supp.2d 894 (N.D.Ill. 2010); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259

F.R.D. 135 (N.D.Ill. 2009); and *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D.Wash. 2007);

and *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Civ. App. 2006). The claim brought here – that

defendant made unsolicited and automated phone calls to cellular phones – rests under the same law.

The basic principle behind the prohibition is the same, too; consumers are entitled to not have

unsolicited phone calls made to their cellular phones, and to not have to pay (through usage fees) for

those unsolicited calls.

On January 5, 2011, a nearly identical class was certified in *Balbarin v. North Star*

*Capital Acquisition, LLC*, Case No. 10 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011)

(Bucklo, J.)(motion to reconsider denied on Jan. 21, 2011, Dkt. No. 160) based on claims arising

under the TCPA as a result of unauthorized calls to cell phones. See also *Mitchem v. Illinois*

*Collection Service, Inc.*, 09 C 7274, 2011 U.S. Dist. LEXIS 714 (N.D. Ill., Jan. 3, 2011).

### III. THE PROPOSED CLASS SATISFIES FED.R.CIV.P. 23

#### a. Rule 23(a)(1) – Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." *Driver v. AppleIllinois LLC*, 265 F.R.D. 293, 300 (N.D.Ill. 2010) held that

> **plaintiffs are not required to specify the exact number of persons in the class; a properly-supported estimate is sufficient. See *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). A court may make common sense assumptions to determine class size. See *Hispanics United of DuPage Co. v. Village of Addison, Illinois*, 160 F.R.D. 681, 688 (N.D.Ill. 1995)** (quotations and citations omitted).

*Perdue v. Individual Members of the Indiana Board of Bar Examiners*, 266 F.R.D. 215, 218

(S.D.Ind. 2010), noted that

> **the Seventh Circuit has not provided specific guidance about when a putative class is large enough to satisfy the numerosity requirement. However, in [*Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)], the court assumed that fourteen individuals would be insufficient... Similarly, in *Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006), the court noted that "joinder of fewer than 40 workers... would be practical" so class certification was inappropriate.**

This is in line with the basic presumption that joinder of more than 40 persons is generally

considered impractical. *Hale v. AFNI, Inc.* 264 F.R.D. 402, 404-405 (N.D.Ill. 2009) (citing *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969)).

Here, plaintiff alleges that he received unauthorized calls from defendant that were made by automated dialers. Automated calls, almost by definition, are made to a large number of people; there would be no need for a computerized dialing program if only a handful of people were being called.[1] If plaintiff's allegation is correct, then the use of an automated dialer to them, and to no more than 40 other people, in the course of four years, would make absolutely no sense – particularly because sophisticated automated dialing programs, like those that collection firms would use, could cost as much as $20,000 or $30,000. (Exhibit A.)

Given that, and the four-year length of the class period, it is reasonable to assume that there are at least 40 people in the class. The exact number of class members will be determined through further discovery.

**b.      Rules 23(a)(2) and 23(b)(3) – Commonality and Predominance**

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

*Hale, supra,* 264 F.R.D. at 405, 407, held in a case dealing with claims under the Fair Debt Collection Practices Act ("FDCPA") that

> **Commonality generally exists when the defendant has engaged in "standardized conduct" toward the members of the proposed class.** *Smith v. Nike Retail Servs., Inc.,* **[234 F.R.D. 648, (N.D. Ill. 2006). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)."** *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992). ...
>
> **Rule 23(b)(3)'s predominance requirement is typically satisfied where the central, common issue is whether the defendant's form letter violates the FDCPA. See** *Quiroz v. Revenue Production Mgmt., Inc.,* **252 F.R.D. 438, 444 (N.D. Ill. 2008) (finding that predominance was satisfied where the common question was whether the defendant's**

---

[1] The purpose of the TCPA was to eliminate abusive, unauthorized phone calls using automated dialers, as plaintiffs have alleged here. P.L. 102-243, §2; 105 Stat. 2394, 2394-2395 (Dec. 20, 1991). The progress in technology since 1991 has only increased the cost-effectiveness of automated dialing for those engaged in bulk telephone collection efforts.

form letter violated §1692e); see also *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 418-19 (N.D. Ill. 2007) (finding that predominance was satisfied where class members received "very similar" letters, and the common legal issue was whether those letters violated the FDCPA); *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (same).

Whereas in *Hale* the claim turned on form collection letters, the claim here deals with unauthorized, automated calls to cellular phones, which are illegal under the TCPA. In both cases, there is a common, essential factual and legal link between one class member and all the others. See *Hinman*, 502 F.Supp.2d at 806 (adopting "common nucleus of operative fact" standard); *CE Design*, 259 F.R.D. at 141 (same)

More generally, *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D. Ill. 1974) held that satisfaction of the predominance requirement of Fed.R.Civ.P. 23(b)(3) "normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?" *Accord, Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 (N.D.Ill. 1995). See *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 506-507 (S.D.Ind. 2007) (similar). In *CE Design*, 259 F.R.D. at 142, the Court held that "when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation."

In this case, the essential fact that links all class members is that defendant called each of them, on their cell phones, using an automated dialer. The violation of the TCPA, with respect to each class member, is identical.

There are only three individual issues concerning class members. The first is the identification of those who received calls from defendant; this can be determined from defendant's records. From this group, the identity of those who received collection calls on their cell phones must be determined. Cell phone numbers in each area code are assigned specific exchanges (that is, the first three numbers of a seven-digit phone number); databases exist which show the exchanges that are reserved for cellular phones. (See <u>Exhibit B</u>) The final inquiry is determining whether defendant obtained a phone number from the creditor, or from a search of records (such as, for

example, a skip-trace). If the phone number was obtained from a creditor, it is possible that the consumer consented to being called at that phone number. No such consent exists, however, for phone numbers obtained through searches of public records and skip-traces.

All of these questions are ministerial in nature, and do not differentiate one class member's claims from another. Questions readily answerable from a defendant's files and public records do not present an obstacle to class certification. *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D. Ill. 1989) found that the commonality and predominance requirements were met even though there were individual questions of injury and damages; those questions could be answered "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank." *Accord, George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 347 (N.D.Ill. 2008) ("some factual variation among the class grievances will not defeat a class action.... so long as those individual issues are manageable through bifurcated hearings or some other mechanism that allows the common issues to be adjudicated together").

The Seventh Circuit has held that the need for "separate proceedings of some character ... to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement... will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *Id.*

7

c.    **Rule 23(a)(3) – Typicality**

Fed.R.Civ.P. 23(a)(3) requires that the claims of a named plaintiff be typical of the claims of the class. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998), held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." (Citation and internal quotation marks omitted.) *Accord, Driver, supra*, 265 F.R.D. at 304.

In the instant case, typicality is inherent in the class definition. By definition, the members of the class were subjected to the same practices as the plaintiff, and thus suffered the same violation of the TCPA that plaintiff suffered.

d.    **Rule 23(a)(4) – Adequacy of representation**

The rule also requires that a named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) a plaintiff must not have interests antagonistic to those of the class. *Rosario, supra*, 963 F.2d at 1018. *Accord, Hale, supra*, 264 F.R.D. at 406; and *CE Design*, 259 F.R.D. at 141-142 ("the interests of the representative parties must coincide with those of the rest of the class, and class counsel must be prepared and able to prosecute the action effectively").

Both of these considerations are satisfied here. Plaintiffs understand the obligations of a class representative, and have retained experienced counsel – as is indicated by <u>Exhibit C</u>, which sets forth counsel's qualifications. Further, both plaintiff and members of the class seek money damages as the result of defendant's unlawful practices, provided for by 47 U.S.C. §227(b)(3). Given the identity of claims between plaintiff and members of the class, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiff and those of the class.

e.    **Rule 23(b)(3) – Superiority**

*Hale, supra*, 264 F.R.D. at 407, noted that "where... the defendant has 'engaged in

8

standardized conduct by sending form letters to many consumers, and each individual consumer's claim would likely be too small to vindicate through an individual suit,' a class action is the most efficient, effective way to proceed. *Quiroz*, [*supra*, 252 F.R.D. at 444]; see also *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)."

      In another FDCPA case, *Randolph v. Crown Asset Management LLC*, 254 F.R.D. 513 (N.D.Ill. 2008) held that "[a] class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually.... the Seventh Circuit has noted that although the FDCPA allows for individual recoveries, this assumes that the plaintiff is aware of his or her rights, willing to be subjected to litigation and able to find an attorney to take the case. *Mace*, [*supra*, 109 F.3d at 344]. 'These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.' *Id.*" *Randolph*, 254 F.R.D. at 520.

      The TCPA, like the FDCPA, is a consumer protection statute. Congress found that "banning... automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." P.L. 102-243, §2(12), 105 Stat. at 2394-2395. But consumers may not be willing or able to pursue relief provided by 47 U.S.C. §227(b)(3) through litigation, and moreover may not be aware that they have the right to pursue such relief in the first place.

      *Hinman*, 545 F.Supp.2d at 807, so held when it stated that "it... appears that resolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources." *Kavu*, 246 F.R.D. at 650, held that "individual damages are small... class members would be unlikely to litigate claims on their own.... [and] potential class members may be unaware of their legal rights." These same circumstances are present here.

## IV.    CONCLUSION

The proposed class meets the requirements of Fed.R.Civ.P. 23(a) and 23(b)(3).

Plaintiff respectfully requests that this Court certify this action as a class action.


Respectfully submitted,

s/ Cassandra P. Miller
Cassandra P. Miller

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)


## CERTIFICATE OF SERVICE

I, Cassandra P. Miller, hereby certify that on January 25, 2011, I caused to be filed the foregoing documents via the CM/ECF System. I caused the foregoing document to be sent to a process server to be served by hand delivery upon the following:

PORTFOLIO RECOVERY ASSOCIATES, LLC
c/o National Registered Agents, Inc.
200 W. Adams Street
Chicago, IL 60606


s/ Cassandra P. Miller
Cassandra P. Miller