# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JEREMY FRYDMAN and SAM MARIN,
on behalf of plaintiff and a class of United States
citizens

          Plaintiff,

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,

          Defendant.

CIVIL ACTION FILE NO.
11 CV 524

Judge Blanche M. Manning

Magistrate Judge Jeffrey T. Gilbert

**Defendant's Memorandum of Law in Support of
Motion to Dismiss or Stay on Primary Jurisdiction Grounds and to Strike
Allegations in the Complaint**

**Table of Contents**

I.      Introduction ........................................................................................................1

II.     Background ........................................................................................................1

III.    The Court should dismiss or stay this case until the FCC completes its
        rulemaking proceeding pursuant to the primary-jurisdiction doctrine..................2

        A.      Plaintiffs' Complaint raises issues that are part of a prior application
                to the agency because they have been raised in response to the
                FCC's pending NPRM .............................................................................4

                1.      The FCC's pending rulemaking proceeding implicates issues
                        directly relevant to the present action ...........................................4

                2.      Comments to the NPRM place issues directly related to this
                        case squarely before the FCC........................................................6

        B.      The Complaint requires determination of questions within the FCC's
                field of expertise and discretion ..............................................................8

        C.      A substantial danger of inconsistent rulings exists ................................10

IV.     The Court should strike references to the FCDPA .............................................12

V.      Conclusion ......................................................................................................13

# Table of Authorities

## Cases

*Am. Mining Congress v. EPA*,
   965 F.2d 759 (9th Cir. 1992) ....................................................................8

*Arsberry v. Illinois*,
   244 F.3d 558 (7th Cir. 2001) ....................................................................2

*Bradford Sch. Bus Transit v. Chicago Transit Auth.*,
   537 F.2d 943 (7th Cir. 1976) ....................................................................3

*Charvat v. Echostar Satellite, LLC*,
   630 F.3d 459, 2010 U.S. App. LEXIS 26404 (6th Cir. 2010) .............................3, 11

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) ..................................................................7

*Cumis. Ins. Doc., Inc. v. Peters*,
   983 F. Supp. 787 (N.D. Ill. 1997)..............................................................12

*Davel Commc'ns, Inc. v. Qwest Corp.*,
   460 F.3d 1075 (9th Cir. 2006) ..................................................................3

*Ford Motor Co. v. NLRB*,
   441 U.S. 488 (1979)..............................................................................3

*Ill. Bell Tel. Co., Inc. v. Global Naps Ill., Inc.*,
   551 F.3d 587 (7th Cir. 2008) ....................................................................2

*Kappelman v. Delta Airlines*,
   539 F.2d 165 (D.C. Cir. 1976)...............................................................8, 11

*Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.*,
   1 F.3d 1031 (10th Cir. 1993) ..................................................................10

*Nader v. Allegheny Airlines, Inc.*,
   426 U.S. 290 (1976)............................................................................2, 3

*Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. and Tel., Co.*,
   46 F.3d 220 (2d Cir. 1995) ......................................................................3

*Navistar Int'l Transp. Corp. v. United States E.P.A.*,
   941 F.2d 1339 (6th Cir. 1991) ..................................................................8

*Ryan v. Chemlawn Corp.*,
   935 F.2d 129 (7th Cir. 1991) ..................................................................2, 3

*S. New England Tel. Co. v. Global NAPS, Inc.*,
 No. 3:04-cv-2075, 2005 U.S. Dist. LEXIS 25898 (D. Conn. Oct. 25, 2005) ...........8

*Sw. Bell Tel. L.P. v. Vartec Telecom, Inc.*,
 No. 4:04-CV-1303, 2005 U.S. Dist. LEXIS 26166
 (E.D. Mo. Aug. 23, 2005) ...........................................................................8, 9, 10

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
 307 F.3d 775 (9th Cir. 2001) ...................................................................................2

*United States v. Dish Network, L.L.C.*,
 No. 09-3073, 2011 U.S. Dist LEXIS 10943 (C.D. Ill. Feb. 4, 2011)...............2, 3, 10

*United States v. W. Pac. R.R. Co.*,
 352 U.S. 59 (1956)...........................................................................................2, 3, 8

*VPHI, Inc. v. Nat'l Educ. Training Grp., Inc.*,
 No. 94 C 5559, 1995 U.S. Dist. Dist. LEXIS 1365 (N.D. Ill. Jan. 20, 1995) ..........12

## Statutes

15 U.S.C. § 1692 (FDCPA)..............................................................................1, 5, 12, 13

47 U.S.C. § 151 .....................................................................................................8, 10

47 U.S.C. § 227(a)(1)...........................................................................................4, 8, 10

Fed. R. Civ. P. 12(f)....................................................................................................12

## FCC Rulings and Orders

*In the Matter of IP-Enabled Servs.*,
 19 FCC Rcd 4863, FCC No. 04-28
 (Notice of Proposed Rulemaking, March 10, 2004) .................................................9

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
 Protection Act of 1991*,
 Report and Order, 18 FCC Rcd 14014 (2003) ........................................................7

*Rules and Regulations Implementing the Telephone Consumer Protection Act
 of 1991*,
 Memorandum Opinion and Order, 10 FCC Rcd 12391 (1995) .................................7

*Rules and Regulations Implementing the Telephone Consumer Protection Act
 of 1991*,
 Report and Order, 7 FCC Rcd 8752 (1992) .............................................................6

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling,* 23 FCC Rcd 559 (2008) ...........................................................................................7

I.      **Introduction**

The Court should dismiss or stay this putative class action under the doctrine of

primary jurisdiction because the Complaint, alleging violations of the Telephone Consumer

Protection Act ("TCPA"), raises issues under consideration by the Federal

Communications Commission ("FCC") in a rulemaking proceeding. Specifically, in

response to extensive comments made as part of the FCC's Notice of Proposed

Rulemaking ("NPRM"), the FCC will address: (1) whether the TCPA applies to calls made

by debt collectors; and (2) whether dialing systems that employ predictive dialing

technology, such as those used by debt collectors, constitute "automatic telephone dialing

systems" ("ATDS") under the TCPA. Should litigation proceed before the FCC decides

these issues, the Court risks issuing a decision counter to the FCC's ruling about the

applicability of the TCPA to the very context at issue here. The doctrine of primary

jurisdiction will avoid the potential of such an inconsistent ruling.

Additionally, the Court should strike paragraphs in the Plaintiffs' Consolidated

Complaint that contain allegations regarding the Fair Debt Collections Protection Act

("FDCPA").

II.     **Background**

Jeremy Frydman, a Northern District of Illinois resident, brought a putative class

action against Portfolio Recovery Associates ("PRA"), alleging violations of the TCPA.

(Dkt. No. 1.) Sam Marin, also a Northern District of Illinois resident, brought a putative

class action against PRA alleging violations of the TCPA and the Fair Debt Collections

Practices Act (FDCPA). On February 25, 2010, Frydman and Marin ("Plaintiffs") filed a

motion to relate their cases, which the Court approved on February 28, 2011. (Dkt. Nos.

33, 34.) Plaintiffs filed their First Consolidated Complaint ("Complaint") on March 4, 2011, alleging violations of the TCPA for PRA's purported use of an automated telephone dialing system ("ATDS") to make calls to Plaintiffs' cell phones. (Dkt. No. 35, ¶¶ 39-42.) Plaintiffs allege that the calls were made to aid PRA in its business of collecting accounts receivables from consumers. (*Id.* ¶¶ 9, 15.)

### III. The Court should dismiss or stay this case until the FCC completes its rulemaking proceeding pursuant to the primary-jurisdiction doctrine.

"[T]he doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Ill. Bell Tel. Co., Inc. v. Global Naps Ill., Inc.*, 551 F.3d 587, 594 (7th Cir. 2008) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956)). The doctrine applies when "a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.*; *see also Arsberry v. Illinois*, 244 F.3d 558, 564 (7th Cir. 2001) ("[T]he court has jurisdiction of the case, but the agency has jurisdiction of the issue."). Courts may dismiss or stay an action during an agency's rulemaking proceeding. *United States v. Dish Network, L.L.C.*, No. 09-3073, 2011 U.S. Dist LEXIS 10943 *6 (C.D. Ill. Feb. 4, 2011) (citing *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 782 n.3 (9th Cir. 2001)).

Strong policy reasons support application of the doctrine of primary jurisdiction. *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991). First, the doctrine promotes consistency and uniformity, "particularly where the development of the law is dependent to some degree upon administrative policy." *Id.* (citing *Nader v. Allegheny Airlines, Inc.*, 426

U.S. 290, 303-04 (1976). Second, the doctrine recognizes an agency's expertise in certain areas and that it may be better-situated to decide complex issues. *Id.* "[A]n administrative agency is uniquely qualified to resolve the complexities of certain areas which are outside the conventional experience of the courts." *Id.* (citing *Ford Motor Co. v. NLRB*, 441 U.S. 488, 496 (1979)).

Application of the primary-jurisdiction doctrine depends on a "determination of whether, in view of the purposes of the statute involved and the relevance of administrative expertise to the issue at hand, the court ought to defer initially to the administrative agency." *Ryan*, 935 F.2d at 131 (quoting *Bradford Sch. Bus Transit v. Chicago Transit Auth.*, 537 F.2d 943, 949 (7th Cir. 1976) (other citation omitted)). The Seventh Circuit applies a case-by-case approach to the primary-jurisdiction doctrine. *Id.* "No fixed formula exists for applying the doctrine of primary jurisdiction." *W. Pac. R.R. Co.*, 352 U.S. at 64; *see also Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, ___, 2010 U.S. App. LEXIS 26404, at *16 (6th Cir. 2010) (permitting "courts to make a workable allocation of business between themselves and the agencies."). To assess application of the primary-jurisdiction doctrine, courts often consider whether: (1) "a prior application to the agency has been made"; (2) "the question at issue is one within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise"; (3) "the question at issue is particularly within the agency's discretion"; and (4) "there exists a substantial danger of inconsistent rulings." *Dish Network*, 2011 U.S. Dist LEXIS 10943 *7 (citing *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006) and *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. and Tel., Co.*, 46 F.3d 220, 222

(2d Cir. 1995)). Each consideration demonstrates that dismissing or staying the case is appropriate.

> **A.     Plaintiffs' Complaint raises issues that are part of a prior application to the agency because they have been raised in response to the FCC's pending NPRM.**

The Complaint alleges that PRA violated the TCPA by placing automated calls to plaintiffs' cell phones. These allegations involve issues squarely before the FCC. The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). To decide the merits of this case, the Court will need to address the applicability of the TCPA to debt collectors and whether PRA's dialing equipment qualifies as an ATDS. Because Congress chose the FCC as the proper body to determine technical and policy-driven questions, it is appropriate to dismiss or stay the instant case pending the FCC's rulemaking proceeding.

> **1.     The FCC's pending rulemaking proceeding implicates issues directly relevant to the present action.**

In January 2010, the FCC released the pending NPRM, announcing proposed amendments to its TCPA rules. (*See* RJN Exh. 1,[1] NPRM, at ¶ 2 (Jan. 22, 2010).) As announced, the FCC's proposed rules involve a requirement that the consumer provide express written consent for automated, prerecorded calls, "*even when* there exists an established business relationship between the caller and the consumer." (*Id.* (emphasis added).) The FCC invited comment from interested parties to the proposed rules, and the period for comments has closed. (*Id.* at ¶ 50.)

---

[1]     Citations to "RJN Exh. __" refer to PRA's Request for Judicial Notice filed contemporaneously herewith.

If the FCC adopts its proposed express consent rule, the requirement would substantially impair the ability of debt collectors to use automatic dialing technology to contact debtors. Not only would this result be costly for these industries, but it may also compromise efforts to comply with its obligations under other federal laws by depriving them of the ability to use automatic dialing technology. Accordingly, the NPRM provoked thousands of comments from a wide range of parties, including members of Congress, leaders in the telecommunications industry, and federal agencies—many in opposition to the proposed rules.[2]

The comments to the NPRM raise two main questions: (1) whether the autodialer restrictions set forth in the TCPA and FCC's corresponding rules apply to PRA; and (2) whether PRA's predictive dialing technology qualifies as an ATDS under the TCPA. The first question requires that the FCC clarify whether the new rules would be applicable to debt collectors. (*See, e.g.*, RJN Exh. 2, Portfolio Recovery Associates, LLC Cmt., i, 6-7 (requesting that the FCC clarify, *inter alia*, that its proposed rule applies only to telemarketing or telephone solicitation calls made using an artificial or prerecorded voice); RJN Exh. 3, Dep't of Treasury Cmt., 2 (distinguishing debt collection from telemarketing, arguing that autodialer restrictions should not apply to debt collectors, and explaining that by reducing human error, autodialing equipment helps collectors comply with obligations under the FDCPA); RJN Exh. 4, Dep't of Educ. Cmt., 2 ("The TCPA and other regulations should only apply to telemarketing activities and should not cover other kinds of calls,

---

[2] Comments provided in response to the FCC's NPRM, CG Docket Number 02-278, are accessible on the FCC's website. *See* Electronic Comment Filing System, *available at* http://fjallfoss.fcc.gov/ecfs/comment_search/execute;jsessionid=N7QhhwsT19vdS6pTZY BpBTMQrh91Khk94JsFQ4vgdz4cdbvHVBhh!-903628806!580504585?proceeding=02-278.

such as loan servicing and debt collection."); RJN Exh. 5, Nat'l Retail Fed'n Cmt., 2-3

(setting forth numerous problems posed by proposed express-consent rule, *inter alia*,

challenges to consumer debt collection).)

   The second question requests revision or clarification of the FCC's interpretation of

"ATDS" and exclusion of predictive dialers that do not dial randomly or sequentially

generated numbers. (*See, e.g.*, RJN Exh. 6, Fin. Bankers Ass'n Roundtable, et al. Cmt., 28

(arguing that the order adopted pursuant to the NPRM should confirm that the TCPA's

autodialer restriction requires use of a random or sequential number generator, *i.e.*, more

than just latent capacity); RJN Exh. 7, Wells Fargo & Co. Cmt., 21 (same); RJN Exh. 8, JP

Morgan Chase & Co. Cmt., 19 (same); RJN Exh. 9, Rep. Matheson, et al., Dec. 3, 2010

Ltr. to FCC, 2 (requesting that the FCC "clarify that predictive dialers are not subject to

regulations that apply to autodialer"); RJN Exh. 10 ACA Int'l Cmt., 56-57 (noting

predictive dialers do not store or produce random or sequentially generated numbers,

which is a prerequisite under the TCPA); RJN Exh. 5 Nat'l Retail Fed'n Cmt., 3 (arguing

to limit "autodialers" to include only "those devices that were specifically used to

randomly dial numbers and not to devices used to assist in the placement of calls that

otherwise comply with the restrictions adopted by the [FTC].").)

   **2.  Comments to the NPRM place issues directly related to this case squarely before the FCC.**

   None of the FCC's earlier rulings and orders interpreting the TCPA considered the

issues raised in the comments to the NPRM in the context of a more restrictive consent

requirement. (*See* RJN Exh. 11 *Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd 8752, 8773, ¶ 39 (1992)

(concluding that an express exemption for debt collection calls was unnecessary because,

at that time, they were adequately covered by other adopted exemptions and such calls were not made from randomly or sequentially generated numbers); RJN Exh. 12 *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12400-01, ¶ 17, 19 (1995) (reaffirming rule); RJN Exh. 13 *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014, 14091 ¶¶ 131-13 (2003) (concluding that predictive dialers with the capacity to store or produce randomly or sequentially generated numbers fall within the TCPA's definition of an ATDS without considering this in the context of the more-restrictive consent requirement in the pending NRMP); RJN Exh. 14 *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *Request of ACA Int'l for Clarification and Declaratory Ruling*, 23 FCC Rcd 559, at ¶¶ 12-14 (2008) (reaffirming the portion of the 2003 Report and Order that dealt with predictive dialers prior to the pending NPRM). The more restrictive consent requirement in the pending NPRM reframes issues central to this action: whether or not the TCPA applies to debt collectors or other non-telemarketers and whether the FCC needs to revisit its interpretation of what constitutes an ATDS to exclude dialing equipment used by debt collectors. The FCC will necessarily address these issues as part of its final decision on the NPRM.

When a complaint raises issues that are the subject of an agency's pending administrative rulemaking proceeding, it is particularly appropriate for courts to dismiss or stay a case under the doctrine of primary jurisdiction. *See, e.g.*, *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114-16 (9th Cir. 2008) (affirming dismissal of a class action because the complaint raised issues before the FCC on a pending rulemaking proceeding);

*see also Sw. Bell Tel. L.P. v. Vartec Telecom, Inc.*, No. 4:04-CV-1303, 2005 U.S. Dist. LEXIS 26166, at **12-13 (E.D. Mo. Aug. 23, 2005) (concluding that deferral to the FCC given the ongoing rulemaking proceedings was appropriate); *S. New England Tel. Co. v. Global NAPS, Inc.*, No. 3:04-cv-2075, 2005 U.S. Dist. LEXIS 25898, at *19 (D. Conn. Oct. 25, 2005) (staying claims of misrouting on primary jurisdiction grounds and noting that the Notice of Proposed Rulemaking and a recent FCC ruling on an AT&T case "demonstrate that these issues are very much in flux and currently being considered by the FCC"); *Kappelman v. Delta Airlines, Inc.*, 539 F.2d 165, 171 (D.C. Cir. 1976) (noting that the doctrine of primary jurisdiction is appropriate in cases where an agency has ongoing legislative or rulemaking activity). Here, deferral to the FCC is appropriate because the NPRM constitutes prior application to the agency.

> **B.**     **The Complaint requires determination of questions within the FCC's field of expertise and discretion.**

Application of the primary-jurisdiction doctrine is appropriate here because issues central to the dispute involve both technical and policy-driven questions within the FCC's discretion. 47 U.S.C. §§ 151, 227 (granting the FCC authority to "execute and enforce" provisions of the Federal Communications Act, including the TCPA); *W. Pac. R.R. Co.*, 352 U.S. at 64 (placing issues requiring "resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body"). In its rulemaking proceedings, the FCC is required to address "'significant' comments" such as "those which raise relevant points and which, if adopted, would require a change in the agency's proposed rule." *Am. Mining Congress v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992); *see also Navistar Int'l Transp. Corp. v. United States E.P.A.*, 941 F.2d 1339, 1359 (6th Cir.

1991) (noting that an administrative agency must respond to comments received in a reasoned manner to show how the agency arrive at its ruling).

When considering whether to apply the primary-jurisdiction doctrine, courts look beyond the narrow question at issue in the case or before the FCC to consider what determinations the FCC's rulemaking proceeding may contribute to resolution of a dispute. *See, e.g.*, *Vartec*, 2005 U.S. Dist. LEXIS 26166 (concluding that deferral to the FCC during the Rulemaking proceedings was appropriate and dismissing without prejudice). In *Vartec*, the defendants asked the Court to defer to the primary jurisdiction of the FCC noting that the FCC had an ongoing proceeding concerning Voice over Internet Protocol ("VoIP") and other IP-enabled services such as interexchange calls. *Id.* at *11 (citing *In the Matter of IP-Enabled Servs.*, 19 FCC Rcd 4863, FCC No. 04-28 (Notice of Proposed Rulemaking, March 10, 2004)). In dismissing the case, the court noted that "[a]mong the issues upon which the FCC is seeking comment are (1) the extent to which access charges should apply to VoIP and other IP-enabled services, and (2) how to classify the providers of these services." *Id.* (internal quotations omitted). The court rejected the plaintiffs' literal construction of the issues, holding that even though tariffs are not within the FCC's discretion, deferral to the FCC was "particularly appropriate" where a "technical determination" and a "policy determination" had to be made. *Id.* at **12-14.

Similarly, the FCC has technical, TCPA-related expertise that is suited to analysis of the complicated and ever-changing dialing technology and its functionality, capability, and uses in everyday operations for non-telemarketing businesses. (*See* RJN Exh. 15, ACA Int'l Reply Cmt., at Exh. 1, (describing functionality and capability of dialers, including lack of capacity, to store or generate telephone numbers using a random or sequential

number generator and changes to hardware or software required to result in such capacity).) Moreover, the FCC is accustomed to consideration of such technological issues. *See Dish Network, L.L.C.*, 2011 U.S. Dist LEXIS 10943, at *8 (staying all TCPA-related claims on primary-jurisdiction grounds pending FCC proceedings). The complex technology warrants dismissal or a stay here. *See Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1038-40 (10th Cir. 1993) (instructing court to stay action involving "a rapidly changing industry," pending FCC's ruling even where the case involved "the sort of statutory interpretation in which courts regularly engage").

Here, as in *Vartec*, dismissal is appropriate because applicability of the FCC's proposed TCPA restrictions to debt collectors' activities is a policy decision, while interpretation of "ATDS" is a technical question. Neither issue is typically determined by the courts because Congress has empowered the FCC to execute and enforce provisions of the TCPA. *See* 47 U.S.C. §§ 151, 227. And both issues involve over-arching, industry-wide considerations currently before the FCC. Therefore, it is appropriate to exercise the flexible doctrine of primary jurisdiction to dismiss or stay this action pending the outcome of the NPRM.

### C.   A substantial danger of inconsistent rulings exists.

Deferral of this case pending the FCC's rulemaking proceeding promotes consistency and uniformity. It also preempts rulings inconsistent with the FCC's determination. *See Mical Commc'ns, Inc.*, 1 F.3d at 1040 (staying an action because of the possibility that "a decision by this court prior to the FCC's response to the ACI petition would result in conflicting decisions, either between our court and the FCC or our court and another circuit if the FCC ruling is appealed."). Indeed, the risk of inconsistent rulings

increases with the frequency of lawsuits. In applying the primary-jurisdiction doctrine in *Charvat*, the Sixth Circuit noted that a volume of lawsuits in federal courts "heightens the risk that individuals and companies will be subject to decisions pointing in opposite directions." 630 F.3d 459, ___, 2010 U.S. App. LEXIS 26404, at *17.

Here, the FCC has not yet addressed the precise issue of whether dialing equipment used by debt collectors, such as predictive dialers, qualifies as an ATDS. *Cf.* RJN Exh. 12, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014, 14091 ¶¶ 131-133 (2003) (concluding generally that predictive dialers with the capacity to dial randomly or sequentially generated numbers fall within the TCPA's definition of an ATDS). Given the prevalence of cellular telephones, litigation regarding alleged TCPA violations is increasingly common. Because these cases are filed all across the country and because they involve issues currently pending before the FCC, the possibility of inconsistent rulings on these issues within agency discretion is high. Abstention pending the FCC's rulemaking proceeding is prudent because the FCC will address these issues. Therefore, abstention avoids such inconsistent rulings.

Automatic telephone dialing technology is a rapidly changing area. The need for uniformity and certainty would be best served by dismissing or staying the case to defer to the FCC's rulemaking process. *See Kappelman*, 539 F.2d at 173 (noting that technical and policy-making questions with industry-wide application are best made in an agency rulemaking proceeding and holding "the trial judge properly invoked the doctrine of primary jurisdiction" because "the need for uniformity and a tribunal of special competence have been shown"). These issues fall outside the conventional experience of

11

judges and are within agency expertise and discretionary authority. For all of these reasons, the Court should dismiss or stay this case pending determination of the FCC's current rulemaking proceedings.

## IV.     The Court should strike references to the FCDPA.

Under Federal Rule of Civil Procedure 12(f), the Court can strike "an insufficient defense or any redundant, immaterial, [or] impertinent, […] matter." Fed. R. Civ. P. 12(f). To succeed on a motion to strike, "the movant must show the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration and that the allegations are unduly prejudicial." *Cumis. Ins. Doc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997) (internal citations omitted). "Prejudice results where the challenged allegation has the effect of confusing the issues . . . [or] places an undue burden on the responding party." *Id.* (citing *VPHI, Inc. v. Nat'l Educ. Training Grp., Inc.*, No. 94 C 5559, 1995 U.S. Dist. LEXIS 1365, at *3 (N.D. Ill. Jan. 20, 1995)).

Plaintiff Marin's original complaint included a cause of action under the FDCPA. (*Marin v. Portfolio Recovery Assocs. LLC*, No. 11-cv-00671 (Dkt. No. 1), ¶¶ 23-28, 36-38.) When Plaintiffs filed their First Consolidated Complaint, however, no FDCPA cause of action was alleged. Yet, the Consolidated Complaint alleges prejudicial and irrelevant facts specific to the FDCPA. (Dkt. No. 35, ¶¶ 20, 23, 27, 31, 33, 34, & 35.) The following allegations should be struck:

- "Upon information and belief, the account on which Defendant is attempting to collect was and is past the statute of limitations pursuant to 735 ILCS 513-205/206." (*Id.* at ¶ 20.)

- "PRA did not identify themselves or leave messages indicating that they were a debt collector in any of these cases." (*Id.* at ¶ 23.)

- "On information and belief, in both instances, the PRA employee failed to advise that they were a debt collector and that this was an attempt to collect a debt." (*Id.* ¶ 27.)

- "During this communication, the employee of PRA failed to disclose the identify of the company from which he or she was calling and failed to disclose that the company was a debt collector calling to collect a debt." (*Id.* at ¶ 31.)

- "Defendant failed to send Plaintiff written notification of Plaintiff's alleged indebtedness to defendant and plaintiff's right to dispute defendant's allegation with five (5) days of defendant's above referenced initial communication to plaintiff." (*Id.* at ¶ 33.)

- "As of the date of filing this lawsuit, plaintiff has not received written notification of the alleged indebtedness." (*Id.* at ¶ 34.)

- "Defendant failed to advise Marin that they were a debt collector and that information obtained would be used in the process of collecting a debt. Defendant has therefore violated FDCPA, 15 U.S.C. § 1692 e(11). (*Id.* at ¶ 35.)

These allegations not only blur the issues before the Court and place an undue burden on PRA to defend itself, but also prejudice PRA because they are unrelated to Plaintiffs' TCPA claim. Indeed, if the Court does not strike the FDCPA-related allegations, PRA will essentially be forced to defend itself against violation of the FDCPA even though no such cause of action is asserted. Accordingly, the Court should strike paragraphs 20, 23, 27, 31, 33, 34, and 35 of the Consolidated Complaint.

## V.     Conclusion

This case should be dismissed or stayed under the primary-jurisdiction doctrine because issues central to resolution of the case are currently before the FCC. If the Court declines to dismiss this action, allegations of violations of the FDCPA should be struck, as Plaintiffs have not asserted a cause of action under the FDCPA and PRA would be prejudiced if forced to defend itself against irrelevant allegations.

Dated:  March 18, 2011

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**


By:___*s/ Jennifer M. Robbins*_____

        Christopher W. Madel
        MN Reg. No. 230297, *admitted pro hac vice*
        Denise S. Rahne
        MN Reg. No. 331314, *admitted pro hac vice*
        Jennifer M. Robbins
        MN Reg. No. 0387745, *admitted pro hac vice*
        Nicole S. Frank
        MN Reg. No. 0388822, *admitted pro hac vice*

        2800 LaSalle Plaza
        800 LaSalle Avenue
        Minneapolis, MN 55402-2015
        Telephone: 612-349-8500
        Facsimile: 612-339-4181
        E-mail: cwmadel@rkmc.com
        Email: dsrahne@rkmc.com
        E-mail: jmrobbins@rkmc.com
        E-mail: nsfrank@rkmc.com

        Alexander S. Vesselinovitch (IL 3122893)
        Emily Prentice (IL 6277643)
        KATTEN MUCHIN ROSENMAN LLP
        525 West Monroe Street
        Chicago, Illinois 60661
        Telephone: 312-902-5200
        Facsimile: 312-902-1061
        Email: avesselinovitch@kattenlaw.com
        Email: emily.prentice@kattenlaw.com

        *Attorneys for Defendants Portfolio Recovery*
        *Associates, LLC*